UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                    Case No. 26-CR-160

AHMAD YOUSEF JUMAA ABULAWI,

Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorney, Peter J. Smyczek, Assistant United States Attorney, and the defendant, Ahmad Yousef Jumaa Abulawi, individually and by attorney Dan Adams, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

## CHARGES

2.      The defendant has been charged in a single count Information, which alleges a violation of Title 18, United States Code, Section 2320(a)(1).

3.      The defendant has read and fully understands the charge contained in the information. He fully understands the nature and elements of the crime with which he has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.      The defendant voluntarily agrees to waive prosecution by indictment in open court.

5.      The defendant voluntarily agrees to plead guilty to the Information set forth in full as follows:

**THE UNITED STATES CHARGES:**

On or about August 13, 2024, in the State and Eastern District of Wisconsin and elsewhere,

**AHMAD YOUSEF JUMAA ABULAWI**

intentionally trafficked in goods, that is, shoes, handbags, belts, a hat, and a watch, on and in connection with such goods, knowingly used counterfeit Nike, Gucci, Dolce & Gabbana, Louis Vuitton, Burberry, Prada, and Rolex marks identical to, and substantially indistinguishable from, genuine marks in use and registered for those goods on the principal register in the United States Patent and Trademark Office.

In violation of Title 18, United States Code, Sections 2320(a)(1) and 2(a).

6.     The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

Since at least September 2017, through at least January 2025, Ahmad Yousef Jumaa Abulawi, a Jordanian national, has been importing and trafficking in counterfeit luxury clothing, purses, and accessories through the operation of a retail store-front business called, "Dutti Fashion," in Milwaukee, Wisconsin. For example, on or about August 13, 2024, Abulawi intentionally trafficked in goods, that is, shoes, handbags, belts, a hat, and a watch, and in connection with such goods, knowingly used counterfeit Nike, Gucci, Dolce & Gabbana, Louis Vuitton, Burberry, Prada, and Rolex marks identical to, and substantially indistinguishable from, genuine marks in use and registered for those goods on the principal register in the United States Patent and Trademark Office.

From approximately September 6, 2017, through at least January 17, 2025, Abulawi was the owner and operator of "Dutti Fashion," a retail store organized under the laws of Wisconsin, and operating at 620 W. Historic Mitchell Street, Milwaukee, Wisconsin.  U.S. Customs and Border Protection (CBP) seized numerous international express consignment parcels from outside the United States destined for Abulawi and Dutti Fashion. The international shipments were falsely manifested, and contained hats, wallets, watches, and other clothing and apparel merchandise containing counterfeit trademarks from various brand name designers, including Louis Vuitton, Jordan, Gucci, and Rolex.

On October 12, 2022, Homeland Security Investigations (HSI) agents entered Dutti Fashion and told the cashier why they were there. The employee contacted Abulawi by phone and

2

handed the phone to the agents. Agents informed Abulawi that Dutti Fashion was selling counterfeit goods, and Abulawi agreed to voluntarily surrender the offending merchandise to HSI. Agents gave Abulawi a receipt, which was signed on behalf of and with the knowledge of Abulawi, acknowledging that he was selling counterfeit merchandise and that the items were being seized by HSI agents. Several hundred items were seized that day.

Several months later, HSI agents were tipped off that Dutti Fashion was again selling counterfeit merchandise. HSI agents and private investigators conducted multiple undercover purchases in which they purchased numerous items for sale. Upon inspection of the items purchased, experts determined that all of the items contained counterfeit trademarks, including counterfeit Nike, Gucci, and Dolce & Gabbana shoes, Louis Vuitton shoes, one Burberry purse, two Gucci belts, three Louis Vuitton purses, one Prada hat, and a Rolex watch. The items purchased by private investigators and undercover HSI agents were priced significantly below what genuine examples of these items would sell for at retail.

On January 17, 2025, Abulawi executed a Bill of Sale and Purchase Agreement for the sale of Dutti Fashion to R.M. Although Abulawi was no longer the owner of Dutti Fashion, Abulawi continued to purchase counterfeit merchandise from suppliers to be sold at Dutti Fashion.

On May 19, 2025, federal agents executed a search warrant on Dutti Fashion. During the search of Dutti Fashion, agents seized thousands of items containing counterfeit trademarks, cell phones, and business records. In Abulawi's phone, agents recovered WhatsApp messages where Abulawi communicated with suppliers, ordered clothing items, and made references to items being counterfeit. HSI determined the domestic value of the seized items to be approximately $385,624.31, or $2,147,610 if the items had been genuine.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7.      The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum penalties: 10 years imprisonment and a $2,000,000 fine. The crime also carries a mandatory special assessment of $100, and a maximum of 3 years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 29 of this agreement.

8.      The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

3

## ELEMENTS

9.      The parties understand and agree that in order to sustain the charge of Trafficking in Counterfeit Goods as set forth in the Information, the government must prove each of the following propositions beyond a reasonable doubt:

1.      First, that the defendant trafficked in goods or services;

2.      Second, that such trafficking was intentional;

3.      Third, that the defendant used a counterfeit mark on or in connection with such goods and services; and

4.      Fourth, that the defendant knew that the mark so used was counterfeit.

## SENTENCING PROVISIONS

10.      The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11.      The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12.      The defendant acknowledges and agrees that his attorney has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13.      The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties

4

acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

**Sentencing Guidelines Calculations**

14.     The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

**Relevant Conduct**

15.     The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

**Base Offense Level**

16.     The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in the Information is 8 under Sentencing Guidelines Manual § 2B5.3(a).

17.     If the sentencing court determines that the defendant does not have any criminal history points, and otherwise meets all of the criteria listed in Sentencing Guidelines Manual § 4C1.1(a), then the government will agree to recommend to the sentencing court that a 2-level decrease is applicable pursuant to § 4C1.1(a) of the Sentencing Guidelines.

5

**Specific Offense Characteristics**

18.     The parties acknowledge and understand that the government will recommend to the sentencing court that a 2-level increase for the importation of counterfeit goods under Sentencing Guidelines Manual Section 2B5.3(b)(3), and that a twelve (12) level increase for an amount of loss greater than $250,000 under § 2B1.1(b)(1)(G) are applicable to the offense level.

**Role in the Offense**

19.     Pursuant to Sentencing Guidelines Manual § 3B1.1(b), the parties acknowledge and understand that the government will recommend to the sentencing court that a 2-level increase be given for an aggravating role in the offense, as the defendant was a manager.

**Acceptance of Responsibility**

20.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), and to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b), but only if the defendant exhibits conduct consistent with those provisions.

**Sentencing Recommendations**

21.     Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22.     Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

6

23.     The government agrees to recommend a sentence of no higher than 24 months' imprisonment.

## Court's Determinations at Sentencing

24.     The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25.     The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

26.     The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction.  The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.  If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

7

27.     The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form.

## Special Assessment

28.     The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Restitution

29.     The defendant agrees to pay restitution as ordered by the court at or before the time of sentencing. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action. The defendant agrees that the restitution judgment will apply to any successor and/or assigns of the corporate victims.

## Forfeiture

30.     The defendant agrees that all properties listed in the information constitute the proceeds of the offense to which he is pleading guilty, or were used to facilitate such offense. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

8

## DEFENDANT'S WAIVER OF RIGHTS

31.     In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

a.      If the defendant persisted in a plea of not guilty to the charge against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b.      If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d.      At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.      At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

32.     The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant

9

under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

33. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

34. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

35. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statute or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statute or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective

10

Case 2:26-cr-00160-JPS    Filed 07/21/26    Page 10 of 14    Document 2

assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

36. The defendant knowingly and voluntarily waives any claim or objection he may have based on statute of limitations and venue.

### Further Civil or Administrative Action

37. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### MISCELLANEOUS MATTERS

38. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, and the defendant understands that no one, including the defendant's attorney or the sentencing court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences, including the potential for automatic removal from the United States.

39. By entering this plea of guilty, the defendant waives any and all right to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material (other than information establishing the factual innocence of the defendant), including Jencks Act

11

material, material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

## GENERAL MATTERS

40. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

41. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

42. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

43. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### Further Action by Internal Revenue Service

44. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

45. The defendant agrees to transmit his original records, or copies thereof, to the Examination Division of the Internal Revenue Service so that the Examination Division of the

12

Internal Revenue Service can complete its civil audit of the defendant The defendant agrees to provide any additional books and records of his which may be helpful to the Examination Division of the Internal Revenue Service to complete its civil audit of defendant.

**EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT**

46. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. Alternatively, the government may, in its discretion, ask the Court to be released from specific obligations under this plea agreement to reflect the defendant's conduct if the defendant commits a federal, state, or local offense punishable by a term of imprisonment exceeding one year or violates a material term of the plea agreement. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

**VOLUNTARINESS OF DEFENDANT'S PLEA**

47. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees

13

that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 7/13/26

AHMAD YOUSEF JUMAA ABULAWI
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 7/13/26

DAN ADAMS
Attorney for Defendant
Wis Bar # 1067564

For the United States of America:

Date: July 13, 2026

PETER J. SMYCZEK
Assistant United States Attorney

14

Case 2:26-cr-00160-JPS    Filed 07/21/26    Page 14 of 14    Document 2